No. 57,665

THE BANK OF WHITEWATER, *Plaintiff-Appellee,* v. DECKER INVEST-MENTS, INC., *et al., Defendants-Appellees,* and AVCO FINANCIAL SERVICES OF TOPEKA, INC., and ASSOCIATES FINANCIAL SERVICES COMPANY OF KANSAS, INC., *Defendants-Appellants,* and BANK OF MID-AMERICA, *Plaintiff-Appellee,* v. COMPASS DEVELOPMENTS, INC., *et al., Defendants-Appellees.*

(710 P.2d 1258)

Opinion filed December 6, 1985.

*Charles S. Fisher, Jr.,* of Fisher, Heck and Wright, P.A., of Topeka, argued the cause and was on the brief for appellants AVCO Financial Services of Topeka, Inc. and Associates Financial Services Company of Kansas, Inc.

*Richard V. Foote,* of Matlack & Foote, P.A., of Wichita, argued the cause and was on the brief for appellee Bank of Whitewater.

*Jack Focht,* of Focht, Hughey & Hund, of Wichita, argued the cause and was on the brief for appellee Karl Umbach.

*Orlin L. Wagner,* of Wichita, argued the cause and *Richard A. Macias* and *Wilbur D. Geeding,* both of Wichita, were with him on the brief for appellees Star Lumber & Supply Co., Inc.; A. B. Masonry Construction, Inc.; and James C. Meadows and Roger D. Meadows d/b/a J & J Enterprises.

The opinion of the court was delivered by

HERD, J.: This is a mortgage foreclosure action wherein two actions were consolidated—one filed by appellee Bank of Whitewater, and one filed by Bank of Mid-America.

After extensive discovery, Associates Financial Services of Kansas, Inc. (Associates); Avco Financial Services of Topeka, Inc. (AVCO); and Bank of Mid-America amended their answers to raise the issue of fraud as a defense to the prior recorded mortgages of the Bank of Whitewater. In addition to asking that their mortgages be adjudged prior, they prayed for actual and punitive damages against the Bank of Whitewater, Karl Umbach, J. Scott Stuber and Stephen A. Decker.

Several mechanics' lien claimants also claimed a first lien on some of the properties being foreclosed upon. The validity of these liens and the dates upon which they attached were issues bifurcated from the main trial and determined at an earlier setting.

The trial court found the mortgages held by the Bank of Whitewater on the property in question to be prior to the claims of Associates, AVCO and the Bank of Mid-America. The court did not find any fraud or wrongdoing on the part of the Bank of Whitewater or its vice-president, Karl Umbach.

Associates, AVCO and the Bank of Mid-America appealed. The Bank of Mid-America has since voluntarily dismissed its appeal.

AVCO and Associates appeal on several issues. Primarily, they claim the trial court erred in failing to hold their mortgages first and prior liens senior to all other interests and in failing to find

that Karl Umbach and the Bank of Whitewater committed fraud upon the appellants.

Let us first identify the parties and their relationship. AVCO and Associates are financial lending institutions incorporated in the State of Kansas with offices located in Wichita, Kansas.

The Bank of Whitewater is a banking corporation organized under the laws of the State of Kansas with its principal place of business in Whitewater, Kansas. John Umbach was the president and operating head of the Bank of Whitewater. His wife, Marilyn Umbach, served as a secretary of the bank and their son, Karl Umbach, served as the bank's executive vice-president. Ninety-eight percent of the bank's stock was owned by the Umbach family.

The Bank of Whitewater was operating under a Consent Agreement issued on August 28, 1975, by the Federal Deposit Insurance Corporation relative to unsound banking practices, which included: excess lending outside of its loan territory; inadequate margin of security on collateral loans; unsatisfactory performance of a borrower; weak financial position; collateral with questionable liquidation value; loan concentration of credit; and improper supervision of loans.

J. Scott Stuber and Stephen A. Decker (hereinafter Stuber and Decker) were residents of Sedgwick County, Kansas. Mr. Decker was the president of Decker Investments, Inc.; Decker and Associates, Inc.; and Compass Developments, Inc. Mr. Stuber is a real estate developer. Stuber and Decker began doing business together in the latter part of 1978, dealing primarily in real estate investments. Stuber and Decker were partners in the transactions involved in this lawsuit. The partnership operated in the name of Stephen Decker in order to avoid judgment creditors of Stuber.

During the latter part of 1979, Stuber and Decker began doing business with the Bank of Whitewater. From 1979 until March of 1981, Stuber and Decker engaged in over 30 lending transactions with the Bank of Whitewater involving over $300,000. As Stuber and Decker reached their loan limits at the bank, several other companies were formed to alleviate loan concentrations at the Bank of Whitewater and to obtain outside financing with other institutions. Among these companies were Decker Investments, Inc.; Decker and Associates, Inc.; Compass Developments, Inc.;

and Darnell Investments, Inc. In addition to the creation of these corporations, defendants Stuber and Decker brought in outside individuals, who were all friends or employees of Decker, to obtain financing. These individuals included James and Carol Darnell, David and Alice Bell, and Joan and Richard Shaw. Stuber and Decker formed a limited partnership with these couples to finance construction of new homes.

On or about February 9, 1980, Stuber and Decker, in the name of Decker Investments, Inc., executed and delivered to the Bank of Whitewater a note in the original sum of $47,883.37. In order to secure this note, Decker Investments executed and delivered to the Bank of Whitewater a mortgage on real property located at 2903 East Douglas in Wichita. A few months later, on April 24, 1980, a release of record on the East Douglas property was filed in the office of the register of deeds in Sedgwick County. The release purportedly bore the signatures of John Umbach, Marilyn Umbach and the signature and notary seal of LaVerne Mosiman, the bank's vice-president and cashier. Max Regier, who was employed by Stuber and Decker, took the original release to the register of deeds for filing. Stuber testified the release originated at the bank as a result of a conversation had between Stuber, Decker and Karl Umbach in which Umbach was told a release was necessary in order to use the property as security for another loan.

Less than one week after the release on the East Douglas property was filed, Decker, acting individually and on behalf of Decker Investments, Inc., borrowed $49,338.13 from Associates Financial Services of Kansas, Inc. Associates took the East Douglas property as security and filed its mortgage of record on April 30, 1980.

The trial court determined the signatures on the release filed on the East Douglas property were forged and neither the bank nor any of its officers, agents or employees had knowledge of the purported release until at least one year after it was recorded. Accordingly, the trial court determined the Bank of Whitewater's mortgage was a valid lien on the real estate with a priority date of February 13, 1980. The mortgage held by Associates on the East Douglas property was held by the trial court to be junior and inferior to the mortgage of the Bank of Whitewater and also to a mortgage of the Wichita State Bank.

On January 7, 1981, Bank of Whitewater refinanced earlier notes of Compass Developments and loaned Compass $150,000. It took as security real property owned by Compass Developments located at 331 Lark, Wichita, Kansas, and described as follows:

Lot 7, Block 10, Westlink. 17th Addition Wichita, Sedgwick County, Kansas.

On January 19, 1981, a release of mortgage on the Westlink property on a Bank of Whitewater form was filed in the office of the register of deeds in Sedgwick County. Less than one month after this release was filed, David and Alice Bell borrowed $48,746.88 from AVCO. AVCO took as security for the loan a mortgage on the Westlink property (Lot 7, Block 10). This mortgage was filed of record on February 23, 1981. The trial court found the signatures on the release filed on the Westlink property were forged by or caused to be forged by Stuber and Decker in order that they could use the Westlink property as security to obtain a loan in the name of David and Alice Bell from AVCO. Accordingly, the trial court found the Bank of Whitewater to be entitled to the proceeds of the sale of the Westlink property, subject, however, to a number of mechanics' liens which had priority over the bank's mortgage. AVCO's lien, while valid, was subject to the prior mechanics' liens and mortgage.

Shortly before this transaction occurred, Stuber and Decker installed tape-recording devices in the telephone and ceiling of their office.

About the middle of February 1981, Stuber gave $5,000 in cash to Karl Umbach as a bribe and in an attempt by Stuber to obtain preferential illegal treatment on insufficient fund checks drawn on the Bank of Whitewater. The conversation surrounding the payment of the bribe was tape-recorded in the office of Stuber and Decker. The trial court found that in exchange for the bribe Karl Umbach agreed to hold checks which were insufficient at the Bank of Whitewater for the maximum period of time and then to return the checks for verification of endorsement rather than returning them as insufficient. This maneuver would give Stuber additional time to cover the checks. The court found it was anticipated the proceeds received from the AVCO loan to David and Alice Bell would be used in this maneuver.

On February 27, 1981, Karl Umbach credited his $5,000 bribe

received from Stuber on the obligation of Darnell Investments, Inc., at the Bank of Whitewater and dated back the credit to February 25, 1981. On March 1, 1981, Mr. Stuber called Karl Umbach and told him that Stephen Decker needed money and he threatened to disclose to John Umbach the taped conversations of the bribe. This was the first Karl Umbach was aware his conversation had been recorded. Stuber requested a meeting with the bank attorneys, which was scheduled for March 2, 1981. At that meeting Stuber told Karl Umbach and the bank attorneys he had taped conversations. Karl Umbach resigned his position with the Bank of Whitewater on March 4, 1981.

On April 1, 1981, the Bank of Whitewater brought suit to foreclose its various mortgages. On May 18, 1981, Bank of Mid-America brought suit to foreclose its mortgage.

On December 16, 1982, appellants AVCO and Associates filed their amended answers, counterclaims and cross-claims as previously stated. They requested trial by jury both in their amended answers and at the pretrial conference held in the case on April 1, 1983.

The lower court bifurcated the trial of the action. The court ordered issues raised by the mechanics' liens claimants to be heard on August 3, 1983. The trial of the fraud and conspiracy issues began November 21, 1983.

The court issued its findings of fact and conclusions of law on July 20, 1984. It held the Bank of Whitewater had a first and prior mortgage on the East Douglas and Westlink properties subject to the liens previously discussed. The court found no wrongdoing on the part of the Bank of Whitewater or Karl Umbach affecting the issues in this case. It did grant punitive damages against defendants Stuber and Decker in favor of AVCO. This appeal by AVCO and Associates from the judgment of the trial court followed.

I.

The first issue raised by appellants on appeal is whether the trial court erred in failing to grant appellants' motion for a jury trial on the issues of fraud and misrepresentation.

The trial court denied appellants' request for a jury trial on the ground that a mortgage foreclosure proceeding is equitable in nature. Appellants argue the legal questions they raised con-

cerning conspiracy to defraud and misrepresentation were not incidental to the mortgage foreclosure proceeding.

The general rule regarding the availability of a jury trial under these circumstances is that in the absence of a statute or rule of procedure dictating a contrary result, the asserting of a counterclaim of a legal nature by a defendant in an equitable action gives him no right to a jury trial. Annot., 17 A.L.R.3d 1321. This rule applies both when the defendant seeks a jury trial of the case generally, or when the defendant requests a jury trial only of the issues raised by the counterclaim.

The Kansas rule is consistent with the general rule. In *First National Bank of Olathe v. Clark,* 226 Kan. 619, 602 P.2d 1299 (1979), we held a party is not entitled to a jury trial as a matter of right in a suit in equity, both at common law and under the Kansas Constitution. In determining whether an action is one in equity, the test is whether the essential nature of the action is grounded on equitable rights and is one in which equitable relief is sought.

Therefore, we must determine whether the present action is essentially equitable in nature. *Karnes Enterprises, Inc. v. Quan,* 221 Kan. 596, 600, 561 P.2d 825 (1977). As we pointed out in *First National Bank of Olathe v. Clark,* 226 Kan. at 623, a mortgage foreclosure action is equitable in nature and the existence of legal claims does not alter the essential nature of it.

Additionally, in *McMurray v. Crawford,* 3 Kan. App. 2d 329, 330, 594 P.2d 1109 (1979), the Court of Appeals held that a foreclosure action is essentially equitable in nature and the defendant's insertion of forgery, misrepresentation and fraud claims into the action does not require a jury trial.

The trial court properly denied appellants' request for a jury trial on the legal issues raised in their counterclaims.

## II.

The appellants next assert the trial court abused its discretion by failing to grant their motion for default judgment against defendant Karl Umbach on their claims of misrepresentation and conspiracy to defraud.

On January 27, 1983, defendant Karl Umbach was served with the amended answers of the appellants which named Karl Umbach as a third-party defendant and asserted cross-claims against Stephen Decker, Scott Stuber and Karl Umbach. Umbach's attorney was served with a copy of the amended answers and

cross-claims on December 16, 1982. No answer was filed by Karl Umbach and on July 15, 1983, appellants filed a motion for default judgment. Defendant Karl Umbach then filed a motion for enlargement of time in which to answer cross-claims. This motion was heard and granted by the trial court on July 20, 1983.

In support of the motion, defendant Umbach argued he did not realize the documents he received contained a claim for relief against him. Mr. Umbach's attorney, Jack Focht, did not deny he received a copy of the amended answers and cross-claims, but simply argued he didn't pay a "great deal of attention" to them since his client, Karl Umbach, was not a party to the case.

Mr. Focht, at the hearing on the motion for enlargement, stated he first became aware of the claims made against his client on July 1, 1983. On that date, he ran into appellants' counsel, Patrick Dougherty, in the clerk's office. Mr. Dougherty was examining a document and Mr. Focht asked him what he was looking at. Mr. Focht claims he then read the document, learned a cross-claim had been filed against his client, and immediately filed a motion to answer out of time. The trial court, after listening to arguments from both sides, granted defendant Karl Umbach's motion to answer out of time.

K.S.A. 60-206(b)(2) gives the trial court discretion to extend the time in which pleadings are to be filed, where the failure to act was the result of "excusable neglect." As we pointed out in *Tyler v. Cowen Construction, Inc.*, 216 Kan. 401, 406, 532 P.2d 1276 (1975), "excusable neglect" is a nebulous term, not susceptible to a clear and exact definition. Whether or not excusable neglect exists must be determined by the trial court on a case-by-case basis considering all the facts presented. In the absence of a showing of abuse of discretion by the trial court, its decision should be affirmed. We find no showing of abuse of discretion upon the facts presented here.

### III.

Appellants next contend the failure of the trial court to find the plaintiff Bank of Whitewater and defendant Karl Umbach guilty of misrepresentation and conspiracy to defraud was contrary to the evidence and an abuse of discretion motivated by passion and prejudice.

The trial court made the following finding of fact with regard

to appellants' charges of misrepresentation and conspiracy to defraud:

"That there is no evidence of a conspiracy to defraud any of the defendants by the Bank of Whitewater or its employees and officers, and that, to the allegations and affirmative defenses raised by Bank of Mid-America, AVCO Financial Services of Topeka, Incorporated, and Associates Financial Services of Topeka, Incorporated to the mortgages of the Bank of Whitewater, the Court finds in favor of the Bank of Whitewater, as the defendants have failed to prove any conspiracy, fraud, or other misconduct on the part of the Bank of Whitewater which would void the mortgages held by the Bank of Whitewater and which are a part of the subject matter of this action."

We have held the existence of fraud is ordinarily a question of fact. An appellate court's review is limited to determining whether the trial court's finding is supported by substantial competent evidence when the evidence is reviewed in a light most favorable to the party prevailing below. It is not the function of this court to weigh the evidence or pass on the credibility of the witnesses and the trier of fact, not the appellate court, has the responsibility of determining what testimony should be believed. *Weigand v. Union Nat'l Bank of Wichita*, 227 Kan. 747, 756-57, 610 P.2d 572 (1980).

Appellants, in support of their contentions of fraud and misrepresentation, suggest the Bank of Whitewater and Karl Umbach caused mortgage releases to be signed and filed in order to allow defendants Stuber and Decker to use the released property as security to obtain additional capital from the appellants. This capital would in turn be applied to outstanding notes at the Bank of Whitewater.

There is no support in the record for this contention. In fact, the trial court specifically found the mortgage release on the East Douglas property was forged by or caused to be forged by Stuber and Decker, stating:

"On or about April 24, 1980, a release of the mortgage filed on February 13, 1980, and referred to in paragraph 25 [East Douglas Property], was filed of record in the office of the Register of Deeds of Sedgwick County, Kansas. From testimony adduced, the court finds that the signatures on the mortgage release are forgeries, and from all of the circumstances and evidence that the preparation of the forged release and filing thereof was either done by J. Scott Stuber or Stephen A. Decker or procured to be done by them. That the Bank of Whitewater used forms purchased from Duke Printing Co. Inc. which had the notation at the bottom of the form "Duke Printing Inc." and that this notation is not on the forged release which was denominated Bank of Whitewater Exhibit 9a. That there are four signatures on the forged release. That there was a conflict in the evidence as to the validity of the signature of John C. Umbach, in that John C.

Umbach denied the signature, but James Maloney testified that it was a genuine signature. Marilyn N. Umbach denied her signature and James Maloney testified that her signature might or might not be genuine. The signature of LaVerne Mosiman was on the forged release twice. Mr. Maloney testified that these signatures were not genuine. The notary seal on this release was not the seal of LaVerne Mosiman, but is a duplicate. The Court considers the evidence that J. Scott Stuber had a forged release from the Bank of Mid-America in his possession and showed the same to Bud White in connection with a loan from Bud White to J. Scott Stuber. The evidence further showed that the Bank of Whitewater had a title company file their mortgage releases, but that Bank of Whitewater Exhibit 9a, 8a, 8b and 8c were filed with the Register of Deeds by Max Regier, an employee of J. Scott Stuber and Stephen Decker. The Court specifically finds that Bank of Whitewater exhibits 8a, 8b, 8c and 9a are all forgeries, either done by J. Scott Stuber or Stephen A. Decker or procured to be done by them without involvement by the Bank of Whitewater or its employees. The original releases were to be returned to Max Regier and are not in evidence, having been lost, misplaced, or in all probability destroyed by the forger."

The court made the same findings of fact with respect to the release of the Westlink property, which was used as security to obtain a loan from AVCO to David and Alice Bell.

The trial judge had the opportunity to view the witnesses and judge the credibility of their testimony with respect to the validity of the releases in question. There is substantial competent evidence to support the trial court's finding the releases were forged and that finding will not be disturbed on appeal.

Appellants have transcribed various segments of tape-recorded conversations between Umbach and Stuber which they claim are evidence of fraud on the part of the Bank of Whitewater and Karl Umbach. The conversations allegedly include a discussion between Umbach and Stuber regarding the use of the proceeds of a loan from AVCO to David and Alice Bell.

There are some problems with considering such conversation to be evidence of fraud. First, it is difficult to discern exactly what Karl Umbach and Stuber are talking about in their taped conversations. Secondly, even if they were discussing the proceeds of the AVCO loan to the Bells, that does not necessarily indicate fraud on the part of the Bank or Karl Umbach. There is no evidence, tape-recorded or otherwise, indicating either the bank or Karl Umbach had knowledge the releases in question were filed.

Appellants also place great emphasis on other segments of the tape-recorded conversation which are transcribed and in their brief. While it is true this conversation relates to the covering of

overdrafts and the $5,000 payment from Stuber to Karl Umbach, and is reprehensible, the appellants have failed to connect this taped conversation to any loss suffered by either AVCO or Associates. The $5,000 payment was first credited by the Bank of Whitewater to the note of Darnell Investments. This entry was later reversed and the $5,000 was returned to Stuber.

It is significant that the taped conversations with Karl Umbach occurred on February 16, 1981; the Bank of Whitewater mortgage releases were all recorded January 19, 1981, and prior thereto. Thus, there is no evidence of a connection between the transactions.

The elements of actionable fraud were set out in *Nordstrom v. Miller*, 227 Kan. 59, 65, 605 P.2d 545 (1980):

"Actionable fraud includes an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or recklessly made with disregard for the truth, where another party justifiably relies on the statement and acts to his injury and damage. [Citations omitted.]

"We have held fraud is never presumed and must be proven by clear and convincing evidence."

There is no clear and convincing evidence that the Bank of Whitewater or Karl Umbach committed fraud upon the appellants, or that any misrepresentations were made by them that either AVCO or Associates relied upon to their detriment.

It is significant that the trial court found "overwhelming evidence" to substantiate the appellants' fraud claims against Stuber and Decker and awarded punitive damages in favor of AVCO against Stuber and Decker.

## IV.

As their fourth point on appeal, appellants argue the trial court erred in failing to find the mortgages held by them on the East Douglas and Westlink properties as first and prior liens senior to all other interests. Specifically, appellants assert the mechanics' lien statements signed by the various lien creditors were incorrectly completed and verified.

After the dismissal of the Bank of Mid-America as an appellant, only the Westlink property remains affected by the mechanics' liens in the present appeal.

Appellants argue the trial court erred in finding the mechanics' liens filed on the Westlink property to be valid liens entitled to priority over appellant AVCO's mortgage. Their primary contention is that the mechanics' lien statements filed by J & J

Enterprises, A. B. Masonry Construction, Inc. and Maurice Cas-
ter were invalid because the verifications failed to show the
nature of the agency or authority of the person signing the
statement.

In *Trane Co. v. Bakkalapulo,* 234 Kan. 348, 352, 672 P.2d 586
(1983), we held that in determining the validity of a lien state-
ment, both the body and verification together must be consid-
ered in their entirety. The lien statement's validity must be
ascertained from its four corners.

Applying this rule to the facts at hand, the trial court properly
determined the liens to be valid.

## V.

The appellants next allege the trial judge erred in failing to
disqualify himself from the proceedings in this case.

The factual basis for the appellants' motion to change judges is
as follows.

At a discovery conference in the office of the trial judge,
Robert C. Helsel, Patrick Dougherty, as counsel for appellants,
informed the court he intended to take the depositions of the
officers of certain mechanics' lien claimants for the purpose of
discussing the validity of such liens. Judge Helsel advised Mr.
Dougherty that such depositions were unnecessary and the pri-
ority of mechanics' lien claimants should be established by
agreement of the parties. The judge noted that while such
depositions are not unlawful, he thought they were unnecessary
and thus would be the proper subject of sanctions against the
attorney taking them.

In view of this conversation, appellants argued the information
and evidence elicited by such depositions would not be given a
fair hearing or unbiased consideration by the trial judge.

The administrative judge examined the affidavit filed by Mr.
Dougherty in support of the motion and determined none of the
grounds set out at K.S.A. 20-311d(b) were present and therefore a
change of judge was not proper.

The only ground for disqualification which might be applica-
ble is K.S.A. 20-311d(b)(5) which applies to bias, prejudice or
interest on the part of the trial judge. However, we have held the
words "bias" and "prejudice," as used in connection with the
disqualification of a judge, refer to the mental attitude or dispo-
sition of the judge toward a party to the litigation and not to any

views he might have regarding the subject matter of the litigation. *State v. Foy*, 227 Kan. 405, 411, 607 P.2d 481 (1980). In *Foy*, we stated views relating to legal questions do not amount to personal bias as required by K.S.A. 20-311d(b)(5).

Here, the trial judge expressed his views regarding the necessity of discovery of the mechanics' liens claimants. The judge displayed no personal bias or prejudice toward appellants or their counsel. Appellants' motion to disqualify the trial judge was properly denied.

## VI.

Appellants next argue the trial court erred in failing to grant their motion for dismissal made at the close of plaintiff's case.

At the close of plaintiff's case, appellants moved to dismiss the case on the ground that no evidence was presented at trial as to the amounts due and owing the Bank of Whitewater as of the time of trial.

The record discloses that on April 1, 1983, a pretrial conference was held. On that date a journal entry was entered, granting the Bank of Whitewater partial judgment. The journal entry established the principal amount due on each note held by the Bank of Whitewater, the interest rate each note bore and the date from which interest was to be calculated. Based upon the journal entry, the amount due at any particular date could be calculated. Since the amounts due and owing had already been reduced to judgment, this issue is without merit.

## VII.

Appellants' final argument on appeal is that the trial court erred in several rulings made regarding the admission of testimony and exhibits offered by the respective parties.

Appellants first claim the trial court erred in admitting the testimony of Max Regier regarding the mortgage releases in question. Max Regier testified that one of two people, Scott Stuber or Stephen Decker, gave him the releases which the trial court later determined to be forged. Appellants argue this testimony was "speculative" and should not have been admitted.

Any error in admitting such testimony was harmless error since there was substantial other evidence supporting the trial court's finding that the releases were forged.

Appellants next claim the court erred in admitting, over objection, Bank of Whitewater Exhibit 18e without counsel having

been provided a copy of the documents prior to trial. Appellants fail to show any prejudice resulting from this action by the trial court and any error was harmless.

Appellants argue the trial court erred in allowing Karl Umbach to testify with respect to a conversation he had with Mr. Eugene Webb of Security Abstract and Title Company. Appellants claim Mr. Umbach's testimony constituted hearsay. Mr. Umbach testified as to statements he made to Mr. Webb regarding his lack of knowledge of the releases filed of record.

Even if Mr. Umbach's remarks constituted hearsay, no prejudice resulted since his testimony was corroborated by Bank of Whitewater Exhibit No. 8, which was evidence of the conversation between Mr. Webb and Mr. Umbach.

Appellants next argue the trial court erred in allowing defendant Karl Umbach to testify with respect to the guarantee and verification of checks. The testimony to which appellants objected was Mr. Umbach's explanation of his bank's check-clearing process and the fact that an oral statement as to whether a check would clear could be no more than an oral verification of the balance in an account at any given time. Appellants objected to this testimony as speculative. Appellants make no claim that the allowance of this testimony prejudiced them in any manner and we find no error in its admission.

Finally, appellants claim error in the trial court's refusal to admit Bank of Mid-America's Exhibit PP. The exhibit contained a letter written by attorney Ted Peters on behalf of his client, J. Scott Stuber, and addressed to the United States Attorney's Office. The letter contained a recollection of events involving defendants Stuber, Decker and Karl Umbach. The trial court determined that Mr. Stuber could refer to the letter to refresh his memory, but that the letter would not be admitted into evidence.

The letter contained self-serving hearsay and appellants have failed to show how the trial court's refusal to admit the letter resulted in prejudice to the appellants. Admission of the letter was properly denied.

The judgment of the trial court is affirmed.

LOCKETT, J., not participating.