NOT DESIGNATED FOR PUBLICATION

No. 112,304

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DONALD R. STREIT,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Nemaha District Court; JAMES A. PATTON, judge. Opinion filed September 11, 2015. Affirmed.

*Charles P. Bradley*, of Galloway, Wiegers & Brinegar, P.A., of Marysville, for appellant.

*Donald J. Cooper*, of Kansas Department of Revenue, of Legal Services Bureau, for appellee.

Before GREEN, P.J., HILL, J., and TIMOTHY G. LAHEY, D.J., assigned.

*Per Curiam*:  Donald Streit appeals an order by the trial court dismissing his petition for judicial review. The Kansas Department of Revenue (KDOR) denied Streit's request for an administrative hearing after his license was suspended because his request was out of time. Streit then sought leave to request a hearing out-of-time arguing that his health prevented him from timely requesting a hearing. The trial court dismissed Streit's petition for judicial review for lack of jurisdiction based on Streit's failure to exhaust administrative remedies. In addition, Streit contends that the officer improperly served him with the notice of suspension (DC-27). Finding no reversible error, we affirm.

On May 18, 2013, around 11:06 p.m. Streit crashed his motorcycle in a single vehicle accident. When Deputy Josh Winkler arrived on the scene of the accident, he saw Streit lying in the grass somewhat responding to people. Shortly thereafter, the EMS arrived and began treating Streit.

Streit was taken to the hospital for further treatment. Deputy Winkler met up with Streit at the hospital around 12:35 a.m. on May 19, 2013. Deputy Winkler asked Streit questions about the accident. Streit denied that he was riding a motorcycle, and he denied that he was involved in an accident.

Streit told Deputy Winkler that he had not consumed any alcohol before the accident. When Deputy Winkler gave Streit a copy of the DC-70 form and read it to him, Streit responded that he had no idea what was going on and he wanted to know why he had been arrested. Deputy Winkler told him that he was not under arrest but that he was requesting a blood sample from Streit to determine how much alcohol he had in his system. Streit told Deputy Winkler that he would not give him a blood sample.

Deputy Winkler then gave Streit a copy of the DC-27 form which showed that Streit had refused the test request. Streit again told Deputy Winkler that he did not know what Deputy Winkler was talking about.

Streit was admitted to the Stormont-Vail Health Care Center on May 19, 2013, and was discharged on May 22, 2013. Streit's discharge condition was listed as "good."

On May 22, 2013, Streit began receiving treatment at the Midwest Rehabilitation, P.A. Streit received care from Midwest Rehabilitation from May 22, 2013, through May 31, 2013. His records show that Streit's treatment was inpatient care on May 24, 27, 28, and 30, but there was no indication of inpatient care on May 22, 23, 25, 26, or 29.

On June 18, 2013, a driver's license suspension and restriction notice was sent to Streit from the KDOR. This notice was sent because the KDOR had not received a request from Streit for an administrative hearing and because Streit had refused a request for a blood test.

On June 24, 2013, Charles Bradley, Streit's attorney, sent a letter to the KDOR formally requesting an administrative hearing. In the letter, Bradley explained that Streit was "unable to refuse a test and as he was hospitalized, he was unable to timely respond to request a hearing." Bradley admitted that Streit's 14 days to appeal had passed, but he maintained that Streit had a right to have an opportunity to refute those reasons.

On June 28, 2013, before getting a response from the KDOR, Streit filed a petition for judicial review in Nemaha County District Court. Streit argued that the administrative determination that he refused to take a blood test was erroneous and that the facts and circumstances show that Streit was incapable of refusing such a request under K.S.A. 8-1001(b). Streit further argued that service of the original notice of suspension by Deputy Winkler was insufficient because Streit was in critical medical condition, and therefore, he was unable to comprehend the documents and request a hearing within the required 14 days.

On July 2, 2013, the KDOR sent Bradley a letter requesting medical documentation to show why Streit was unable to make a timely request for an administrative hearing. The letter explained that the KDOR would consider the documents in determining whether Streit is entitled to an administrative hearing.

On July 15, 2013, Bradley faxed the KDOR five pages of documents. The first page consisted of the fax cover page. The next document included Stormont-Vail's record with Streit's admission date to the hospital on May 19, 2013, and his discharge date of May 22, 2013. Bradley also included Stormont-Vail's discharge summaries report which

3

was signed by D.O. Kenneth Boyd. The next page was a statement from Midwest Rehabilition, P.A. which showed Streit received coverage from May 22, 2013, through May 31, 2013. Again, the document showed that Streit received inpatient care on May 24, 27, 28, and 30, but there is no indication of inpatient care on May 22, 23, 25, 26, or 29. The final fax page was a copy of the July 2, 2013, letter that the KDOR had sent to Bradley requesting the medical documentation.

The KDOR refused to consider the medical documents that Streit submitted because Streit had already filed a petition for judicial review.

On August 2, 2013, the KDOR filed an answer to Streit's petition for judicial review. In its answer, the KDOR argued that the trial court lacked jurisdiction to consider this appeal because Streit had failed to exhaust his administrative remedies by not requesting an administrative hearing in a timely manner. To support its argument the KDOR relied on *Moser v. Kansas Dept. of Revenue*, 289 Kan. 513, 213 P.3d 1061 (2009). As a result, the KDOR moved to have the matter dismissed.

On May 29, 2014, the trial court held a hearing on the KDOR's motion to dismiss. At the conclusion of the hearing, the trial court ruled that Streit had failed to exhaust his administrative remedies. The trial court further held: "There is insufficient evidence in the record that would establish his [in]capacity to request that hearing within a timely manner; therefore, the District Court of Nemaha County lacks subject matter jurisdiction. The motion to dismiss or summary judgment requested by [KDOR] is granted. The petition is dismissed." The trial court additionally found that the original service of the notice of suspension was properly served based on the applicable statutes.

Streit appealed the trial court's decision.

4

*Did the Trial Court Err in Dismissing Streit's Petition for Judicial Review for Lack of Jurisdiction Based on Streit's Failure to Exhaust Administrative Remedies?*

Streit argues that it was impossible for him to request an administrative hearing within the required 14 days because he was hospitalized for 13 of those 14 days and because the 14th day was a Sunday. Streit maintains that he did not fail to exhaust his administrative remedies because no administrative remedies existed for him.

By statute, a person that operates a vehicle in Kansas "is deemed to have given consent, subject to the provisions of this article, to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs." K.S.A. 2014 Supp. 8-1001(a). Under K.S.A. 2014 Supp. 8-1002, a driver who fails or refuses a test is entitled to notice of his or her rights which are provided in a document commonly known as a DC-27 form. One of those rights is the right to request an administrative hearing. The DC-27 form explains the procedure that the driver must follow to request such a hearing.

K.S.A. 2014 Supp. 8-1020(a) requires that a licensee must request an administrative hearing within 14 days after being served with the DC-27 form. In this case, it is undisputed that Streit failed to request a hearing within 14 days. Nevertheless, Streit contends that the court should excuse him from belatedly seeking an administrative hearing because his health prevented him from timely filing a request for a hearing. See *Moser v. Kansas Dept. of Revenue,* 289 Kan. 513, 519-20, 213 P.3d 1061 (2009) ("[T]he time for taking an administrative appeal, as set by statute, is jurisdictional and delay beyond the statutory time limit is fatal. [Citation omitted.]").

K.S.A. 60-206 is made applicable to requests for administrative hearings under K.S.A. 2014 Supp. 8-1020(v). Specifically, K.S.A. 60-206(b)(l)(B) provides that a filing deadline may be extended for "good cause" upon a showing of "excusable neglect."

5

Generally, if a party is claiming excusable neglect when requesting an extension of the deadline to file an appeal, the standard of review of the trial court's decision is abuse of discretion. See *Bank of Whitewater v. Decker Investments, Inc.,* 238 Kan. 308, 315, 710 P.2d 1258 (1985).

The party seeking an extension of the time limitation bears the burden of showing excusable neglect, and it must be determined on a case-by-case basis. See *Jenkins v. Arnold,* 223 Kan. 298, 299, 573 P.2d 1013 (1978). Specifically:

> "When a party in default seeks an enlargement of time based upon excusable neglect under K.S.A. 60-206(b), his request should be supported by evidence of his good faith, he should establish a reasonable excuse for his failure and he should show that the interests of justice can be served by granting the enlargement. After considering these matters the determination should rest in the sound judicial discretion of the trial court." *Boyce v. Boyce,* 206 Kan. 53, 56, 476 P.2d 625 (1970).

In this case, Streit bears the burden of showing excusable neglect. To do so, he needs to show that his health prevented him from timely requesting an administrative hearing.

Unfortunately, Streit failed to meet his burden of proof for excusable neglect. In response to the KDOR's request for evidence to support his claim of excusable neglect, Streit provided five pages of documents which included his Stormont-Vail hospital stay which totaled 4 days and his Midwest Rehabilitation care which showed multiple days of intermittent inpatient care. Although the KDOR refused to consider those documents, the trial court determined that those documents were insufficient to show that Streit lacked the mental capacity to request a hearing within a timely manner.

Based on the documents in the record, Streit was hospitalized at Stormont-Vail for 4 days. Streit then received care from Midwest Rehabilitation, some of which was

6

inpatient and some was out-patient care. The record shows that Streit received inpatient care from Midwest Rehabilitation for 4 days. This means that within the relevant 14-day period, Streit was receiving some type of inpatient care for 8 of the 14 days. That left Streit 6 days to timely request an administrative hearing. It should also be noted that Streit's 14-day period ended on a Sunday which allowed him 1 additional day to request a hearing.

After reviewing all of the evidence, the record clearly lacks support for Streit's claim that it was impossible for him to timely file a request for an administrative hearing. Streit was not hospitalized or receiving inpatient care for 6 days of the relevant 14-day period. Thus, Streit has failed to show excusable neglect. Therefore, because Streit failed to request an administrative hearing, he failed to exhaust his administrative remedies. As a result, we determine that the trial court properly dismissed Streit's petition for lack of jurisdiction.

*Was the Service of the Notice of Suspension Proper?*

Next, Streit argues that the service of the notice of suspension (DC-27) was not proper because service directly on a disabled person is ineffective service. Streit points to Deputy Winkler's report which stated that Streit was "unable to follow along" with the documents provided to him by Deputy Winkler.

Deputy Winkler's investigative report stated in relevant part as follows:

"I [Deputy Winkler] first told Donald [Streit] who I was and asked him how he wrecked his motorcycle. Donald stated he did not wreck and was not riding a motorcycle. I told him he was in a motorcycle accident and he still stated he had not been in an accident. I asked him if he had consumed any alcohol before the wreck and he stated he had not. I then read him the DC 70 Implied Consent Advisory and asked him to submit to a blood test. I later provided him with a copy of the DC 70 as he was unable to follow along as I

7

read because of his medical condition resulting from the accident. Donald immediately said he had no idea what was going on and wanted to know why he had been arrested. I told him he was not under arrest and that I was not going to arrest him that night. I explained to him that I wished to collect a blood sample to determine how much alcohol he had in his system. Donald then stated that he did not want to provide a sample and told me no to having one collected. . . .

"I later provided Donald a copy of the DC 27 that showed he had refused the test. He stated he didn't know what I was talking about and I left the hospital."

There was no denial of fundamental rights here. Streit does not dispute that Deputy Winkler followed the proper procedure in presenting him with the implied consent advisories, in both oral and written form, in a manner that conformed to K.S.A. 2014 Supp. 8-1001(k). Streit also does not dispute that he declined to submit to the requested blood test after receiving the implied consent advisories.

Streit argues that because he "was unable to manage his own affairs or understand that he was in an accident, it would be clear to see that he was incapable of understanding the significance of the document which he was served."

Nevertheless, K.S.A. 2014 Supp. 8-1001(r) specifically states: "It shall not be a defense that the person did not understand the written or oral notice required by this section." While Streit claims to have not been capable of understanding the ramifications of his decisions, the only requirement here is that the required statutory warnings be properly given. See *Buchanan v. Kansas Dept. of Revenue*, 14 Kan. App. 2d 169, 171, 788 P.2d 285 (1989). Moreover, there is no evidence in the record to support Streit's claim that he was mentally or physically incapacitated to such a degree that would render service ineffective. Instead, the record shows that Streit was somewhat responsive and that he told Deputy Winkler no when he was asked to submit a blood sample.

8

As a result, the trial court properly determined that service of the notice of suspension was valid.