No. 119,454

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARLON SHEPPARD,
*Appellant*.

SYLLABUS BY THE COURT

1.

A district court's decision to deny a party's request for leave to file a motion out of time is reviewed for an abuse of discretion. A judicial action constitutes an abuse of discretion if no reasonable person would take the view adopted by the trial court, it is based on an error of law, or it is based on an error of fact.

2.

A motion to dismiss must be filed either before arraignment or within 21 days after the plea is entered. The district court may allow the motion to be filed after the time limit has expired if the party can demonstrate that his or her failure to act was a result of excusable neglect. The burden to show excusable neglect is on the party seeking an extension of the time limitation.

3.

What constitutes excusable neglect under a statute must be determined by the court on a case-by-case basis under the facts presented in support of and in opposition to the enlargement of time. The court should consider the circumstances under which the

1

neglect to act occurred as well as the effect of an enlargement upon the rights of all parties affected thereby.

4.

Evidence of good faith, a reasonable excuse for the failure, and that the interests of justice could be served by granting the request are factors the court may use to determine whether a party has demonstrated that his or her failure to act was a result of excusable neglect.

5.

Whether a sentence is illegal is a question of law over which an appellate court has unlimited review. An illegal sentence is a sentence imposed by a court without jurisdiction; that does not conform to the applicable statutory provision, either in character or punishment; or that is ambiguous with respect to the time and manner in which it is to be served at the time it is pronounced.

6.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words.

7.

The criminal statutes and penalties that were in effect at the time that the crime occurred are controlling unless the Legislature explicitly gives retrospective effect to statutory changes made after the commission of the crime. A statute generally only operates prospectively unless the language of the statute demonstrates the Legislature's

clear intent that it operate retrospectively or the statutory change is procedural and does not prejudice the substantive rights of the parties.

8.

The 2015 statutory amendments to K.S.A. 21-6810 are procedural in nature and shall be construed and applied retroactively.

9.

The 2016 statutory amendments to the juvenile decay rules are substantive in nature and the Legislature has included no clear language that it intended the 2016 amendments to K.S.A. 21-6810 to operate retroactively.

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed May 24, 2019. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Kayla Roehler*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., GARDNER, J., and WALKER, S.J.

STANDRIDGE, J.:  In 2006, a jury convicted Marlon Sheppard of one count of second-degree murder and two counts of criminal possession of a firearm. Sheppard appealed, and his convictions were affirmed by a panel of this court in 2009. In 2017, Sheppard filed a pro se motion to dismiss as well as a motion for leave to file the motion to dismiss out of time. The motion for leave to file the motion to dismiss out of time was denied. Sheppard appealed. A few months later, Sheppard filed a pro se motion to correct an illegal sentence. That motion also was denied. Sheppard again appealed. Those

3

appeals have been consolidated for our consideration. Finding no error, we affirm the district court's decision to deny each of Sheppard's motions.

FACTS

On June 8, 2006, a jury convicted Sheppard of one count of second-degree murder and two counts of criminal possession of a firearm. Following his convictions, Sheppard filed a motion for a new trial and a motion for a departure sentence. The former was denied but the latter was granted, and Sheppard was sentenced to 354 months in prison. Sheppard filed a direct appeal. In its opinion, a panel of this court found the following facts:

"On October 19, 2005, Christopher Schley drove Sheppard in Sheppard's green Pontiac to a house party on Hiawatha Street. Schley parked, and Sheppard got out of the car. Kimberly Norman, a witness that later contacted the district attorney's office with information, stated [Chris] Brewer [the victim] arrived at the party at about 3:30 a.m., and Sheppard arrived 10 or 15 minutes later. Norman saw Brewer and Sheppard talking in Misha Franklin's car outside the party. Franklin was Brewer's girlfriend, and Brewer was driving Franklin's gray Honda Civic that night.

"Norman saw Brewer and Sheppard drive off together at about 4:00 a.m. Norman also saw a car she described as a 'green something, like a teal Grand Prix or something like that.' Norman said the green car drove away from the party before Brewer and Sheppard left, but she could not see who was driving.

"At 5:30 a.m., Roxanne Barnett heard noises in the parking lot outside her apartment, and she looked out her window when she heard a car door close. Barnett was Franklin's neighbor. Barnett saw someone sitting in the driver's side of Franklin's car. Barnett also saw a dark colored Grand Am parked in a 'T-position' behind Franklin's car. Barnett's car was parked next to Franklin's car, and Barnett went outside to check that her car was locked.

"After checking her car, Barnett went back upstairs to her apartment and again looked out her window. She saw someone wearing a dark colored sweatshirt or hoody and light colored pants (similar to sweatpants) get out of the passenger side of the Grand

4

Am and get into the passenger side of Franklin's car. The Grand Am then pulled back by a trash can with the front end of the car pointed at Franklin's car. Barnett estimated the two people talked in Franklin's car for 5 minutes before she heard two pops and saw flares through the windshield. According to Barnett, the passenger then got out of Franklin's car, the Grand Am pulled up into a 'T-position' again, and the person got into the Grand Am. When police arrived on the scene, they found Brewer murdered in Franklin's car.

"Sometime after the murder, Schley was questioned by the police. The interviewing detective testified at trial regarding statements Schley made during this interview. Schley reported that on the night of the murder, Sheppard showed Schley a gun and told Schley that he planned to rob Brewer. Schley also reported that Sheppard said 'should this robbery go bad, he was willing to put [Brewer] to sleep.' Schley stated that he and Sheppard then went to the party on Hiawatha Street together. Schley left the party and drove Sheppard's vehicle back to his house. Schley became very evasive when the detective tried to establish the general timeline for the evening.

"The police eventually took Sheppard into custody and interviewed him regarding his whereabouts on the night in question. Sheppard told investigators that he met Brewer at a party on Hiawatha Street and that Brewer dropped him off at his girlfriend's house sometime between 2:00 and 2:30 a.m. Sheppard told the detectives that Schley had control of his car after Sheppard left the party with Brewer.

"While Sheppard was in custody, the police recorded a phone call from the jail between Sheppard and Schley. During the phone conversation, Sheppard and Schley cryptically discussed what they told police:

"'*SCHLEY:* . . . I said we were, we was over in Missouri. Did this and then, you know, he hollered at old boy. And they were like, yeah we went through the phone records, he was really trying to get at him, get at him. I was like I don't know about none of that. . . . Far as what were was doing, driving around looking for, you know what I'm saying, fucking with little bitches and then we hollered at old boy and then we came on out here. . . .

"'*SHEPPARD:* Yeah what, what, I mean, what you mean, you told 'em what you did, drop me off right?

. . . .

5

"'*SCHLEY:* Naw, that, that, uh, you had hollered at him and got in the car. I was like, yeah, you know what I'm saying? We got in the car and came back here.

. . . .

"'*SHEPPARD:* . . . I got in the car with dude and he dropped me off. That's what I told 'em. Shit, he dropped me off at my girl house and then later on we probably went to Grandview. Talking about, is that when you talking about?'

"Schley ultimately was granted immunity from any charges related to the death of Brewer. Notably, Schley failed to appear at Sheppard's preliminary hearing to testify, which forced the State to dismiss the charges against Sheppard. The case was refiled, and Schley was arrested for absconding. Schley had moved to Mississippi, and the district court had to compel his attendance at trial." *State v. Sheppard*, No. 98,337, 2009 WL 743094, at *1-2 (Kan. App. 2009) (unpublished opinion).

Sheppard argued on appeal that there was insufficient evidence to support two of his convictions, that trial counsel was ineffective, that the district court erred in failing to modify a PIK jury instruction, and that cumulative errors required the court to remand for a new trial. Finding no error, a panel of this court affirmed Sheppard's convictions. *Sheppard*, 2009 WL 743094, at *2-8.

On January 11, 2011, Sheppard filed a pro se motion seeking habeas corpus relief pursuant to K.S.A. 60-1507. Among other things, Sheppard argued that his Fourth Amendment rights under the United States Constitution were violated when he was arrested without probable cause. Given the lack of probable cause, Sheppard claimed all evidence obtained as a result of his arrest should have been suppressed. The State opposed Sheppard's motion, and it ultimately was denied by the district court. It is unclear from the record whether Sheppard appealed the court's decision.

On April 17, 2017, Sheppard filed a pro se motion to dismiss in which he reiterated his previous claim that he was arrested without probable cause and therefore all

6

evidence obtained as a result of the arrest must be suppressed. The next day, Sheppard filed a second pro se motion, this time seeking the court's leave to file out of time the motion submitted the day before. To justify his request to file the motion out of time, Sheppard alleged that counsel's failure to adequately protect his interests prior to trial constituted "excusable neglect."

The district court denied Sheppard's request to file his motion to dismiss out of time. The court found Sheppard failed to establish the excusable neglect necessary to justify doing so. The court also found Sheppard's motion was indistinguishable from the facts presented and the relief requested in the habeas corpus motion he filed in 2011, a fact which undermined Sheppard's claim that excusable neglect and ineffective assistance of counsel were the reason his claim should now be considered.

Sheppard appealed from the district court's decision that he failed to show excusable neglect. While that appeal was pending, Sheppard filed a pro se motion to correct an illegal sentence, in which he argued that the district court improperly included a juvenile adjudication in calculating his criminal history score during sentencing. The court denied Sheppard's motion and Sheppard appealed. Sheppard's two appeals have been consolidated for our consideration.

ANALYSIS

*Excusable neglect*

Sheppard claims the district erred by declining to grant him leave to file out of time his motion to dismiss. When a district court denies a party's request for leave to file a motion out of time, that decision is reviewed for an abuse of discretion. *Bank of Whitewater v. Decker Investments, Inc.*, 238 Kan. 308, 315, 710 P.2d 1258 (1985). A judicial action constitutes an abuse of discretion if: (1) no reasonable person would take

the view adopted by the trial court, (2) it is based on an error of law, or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

Pursuant to K.S.A. 2018 Supp. 22-3208(4), a motion to dismiss must be filed either before arraignment or within 21 days after the plea is entered. It is undisputed that Sheppard did not file his motion in a timely manner. The district court may, however, allow the motion to be filed after the time limit has expired if the party can demonstrate that his or her failure to act was a result of excusable neglect. See K.S.A. 2018 Supp. 60-206(b)(1)(B). The burden to show excusable neglect is on the party seeking an extension of the time limitation. See *Boyce v. Boyce*, 206 Kan. 53, 56, 476 P.2d 625 (1970). Although Kansas allows the use of "excusable neglect" in several different statutes, cases, and administrative regulations, no Kansas authority directly outlines the prerequisites needed to establish the "nebulous" term of excusable neglect. *Tyler v. Cowen Construction, Inc.*, 216 Kan. 401, 406, 532 P.2d 1276 (1975).

> "What constitutes excusable neglect under the statute must be determined by the trial court on a case by case basis under the facts presented in support of and in opposition to the enlargement of time. The trial court should consider the circumstances under which the neglect to act occurred as well as the effect of an enlargement upon the rights of all parties affected thereby." *Boyce*, 206 Kan. at 55-56.

Considering the phrase as it is used in K.S.A. 60-206(b), the *Boyce* court suggested that a party could show excusable neglect by providing evidence of good faith, establishing a reasonable excuse for the failure, and showing that the interests of justice could be served by granting the request. 206 Kan. at 56. Considering the phrase as it is used in K.S.A. 60-260(b)(1), the Supreme Court noted that inexcusable conduct is akin to reckless indifference and implies something more than a good faith and "unintentional inadvertence or neglect common to all who share the ordinary frailties of mankind." *Jenkins v. Arnold*, 223 Kan. 298, 299, 573 P.2d 1013 (1978).

8

In support of Sheppard's claim that the district court abused its discretion by denying his motion, Sheppard argues on appeal, as he did below, that his counsel's failure to protect him from pretrial "procedural pitfalls" constitutes the excusable neglect necessary to justify his delay in filing. Put in context, Sheppard claims he was arrested in 2006 based on an affidavit that contained false information and that the reason he waited 11 years to challenge the facts set forth in the affidavit is because his counsel failed to protect him from this "procedural pitfall."

We find Sheppard's reason for failing to file a timely motion to dismiss challenging the facts set forth in the affidavit does not rise to the level of excusable neglect. In so finding, we have considered not only the specific reason set forth by Sheppard, but all of the circumstances surrounding the untimely filing, including the fact that Sheppard waited 11 years after the deadline to request permission to file his motion and the effect it would have on all parties if the district court were to grant Sheppard leave to file his motion to dismiss 11 years past the deadline. These facts demonstrate that Sheppard did not make a good-faith effort to pursue dismissal, did not provide a reasonable excuse for failing to file a timely motion to dismiss, and did not show that the interests of justice would be served by granting the request. See *Boyce*, 206 Kan. at 56.

For the reasons stated above, we conclude the district court did not abuse its discretion in finding that Sheppard failed to establish excusable neglect. See *Wiles*, 302 Kan. at 74 (A judicial action constitutes an abuse of discretion if:  (1) no reasonable person would take the view adopted by the trial court, (2) it is based on an error of law, or (3) it is based on an error of fact.).

*Motion to correct illegal sentence*

Sheppard claims that his sentence in this case is illegal because his criminal history score improperly included a decayed juvenile adjudication. Whether a sentence is

9

illegal within the meaning of K.S.A. 2018 Supp. 22-3504 is a question of law over which an appellate court has unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016).

K.S.A. 2018 Supp. 22-3504(3) defines an "illegal sentence" as a sentence "[i]mposed by a court without jurisdiction; that does not conform to the applicable statutory provision, either in character or punishment; or that is ambiguous with respect to the time and manner in which it is to be served at the time it is pronounced." Kansas courts construe K.S.A. 2018 Supp. 22-3504 narrowly and only in rare cases do they find a sentence to be illegal. See *State v. Edwards*, 281 Kan. 1334, 1336, 135 P.3d 1251 (2006). Here, Sheppard claims that the second of these statutory provisions applies, specifically arguing that his sentence is illegal because the 2016 amendments to K.S.A. 21-6810 apply retroactively; therefore, his 1994 juvenile adjudication for burglary of a dwelling should have decayed and should not have been included in the calculation of his criminal history score for this case.

Sheppard's underlying crimes of conviction occurred in 2005, at which time his criminal history score was calculated pursuant to K.S.A. 21-4710 (Furse 1995). It stated, in relevant part:

> "(d) Except as provided in K.S.A. 21-4716, and amendments thereto, the following are applicable to determining an offender's criminal history classification:
> . . . .
> (6) All juvenile adjudications which would constitute a person felony will not decay or be forgiven." K.S.A. 21-4710(d)(6) (Furse 1995).

When an adjudication decays, it is no longer considered in determining an offender's criminal history score. K.S.A. 2018 Supp. 21-6803(e); *State v. Smith*, 49 Kan. App. 2d 88, 90, 304 P.3d 359 (2013). As such, when Sheppard was sentenced in 2006, his prior juvenile adjudication for burglary of a dwelling did not decay and therefore was

10

used to calculate his criminal history score because the burglary of a dwelling offense would have been a person felony if it had been committed by an adult. See K.S.A. 2018 Supp. 21-5807; K.S.A. 21-3715.

K.S.A. 21-4710 was repealed in 2010 and replaced in 2011 by K.S.A. 21-6810. L. 2010, ch. 136, § 291. The new statute provided, in relevant part:

"(d) Except as provided in K.S.A. 2011 Supp. 21-6815, and amendments thereto, the following are applicable to determining an offender's criminal history classification:

. . . .

(3) There will be no decay factor applicable for:

. . . .

(B) a juvenile adjudication for an offense which would constitute a person felony if committed by an adult." K.S.A. 2011 Supp. 21-6810(d)(3)(B).

The statute was amended again in 2015, this time in response to the Kansas Supreme Court's decision in *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *overruled by State v. Keel*, 302 Kan. 560, Syl. ¶ 9, 357 P.3d 251 (2015). See L. 2015, ch. 5, § 1. The *Murdock* court held that when classifying an offender's out-of-state crimes to determine his or her criminal history score, courts must look to comparable offenses in Kansas on the dates that the out-of-state crimes were committed. 299 Kan. at 317. But because Kansas law did not distinguish between person and nonperson crimes prior to the passage of the Kansas Sentencing Guidelines Act in 1993, the *Murdock* court held that all pre-1993 out-of-state crimes must be treated as nonperson felonies for criminal history scoring purposes. 299 Kan. at 319. With the 2015 amendment, the Legislature clarified that all pre-1993 out-of-state convictions and adjudications, both adult and juvenile, "shall be scored as a person or nonperson crime using a comparable offense under the Kansas criminal code in effect on the date the current crime of conviction was committed." L. 2015, ch. 5, § 1. The amendment also added subsection (e) to K.S.A. 21-6810, which provided that "[t]he amendments made to this section *by this act* are

11

procedural in nature and shall be construed and applied retroactively." (Emphasis added.) L. 2015, ch. 5, § 1.

The Legislature amended K.S.A. 21-6810 again in 2016, this time changing the types of prior adjudications that could and could not be included in the calculation of an offender's criminal history score. See L. 2016, ch. 97, § 1. The amendment provided, in relevant part:

"(d) Except as provided in K.S.A. 2015 Supp. 21-6815, and amendments thereto, the following are applicable to determining an offender's criminal history classification:

. . . .

(3) There will be no decay factor applicable for:

. . . .

(B) a juvenile adjudication for an offense which would constitute a nondrug severity level 1 through 4 person felony if committed by an adult. Prior juvenile adjudications for offenses that were committed before July 1, 1993, shall be scored as a person or nonperson crime using a comparable offense under the Kansas criminal code in effect on the date the current crime of conviction was committed[.]

. . . .

(4) Except as otherwise provided, a juvenile adjudication will decay if the current crime of conviction is committed after the offender reaches the age of 25, and the juvenile adjudication is for an offense:

. . . .

(B) committed on or after July 1, 1993, which would be a nondrug severity level 5 through 10, a non-grid felony or any drug felony, if committed by an adult." L. 2016, ch. 97, § 1.

And finally, in 2017, the Legislature amended K.S.A. 21-6810 a third time, changing, among other things, subsection (e). It now provides that "[t]he amendments made to this section by section 1 of chapter 5 of the 2015 Session Laws of Kansas are procedural in nature and shall be construed and applied retroactively." L. 2017, ch. 92, § 5.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). That does not mean, however, that all statutory changes and updates apply retrospectively, particularly in criminal cases. Instead, the criminal statutes and penalties that were in effect at the time that the crime occurred are controlling unless the Legislature explicitly gives retrospective effect to statutory changes made after the commission of the crime. *State v. Denney*, 278 Kan. 643, 646, 101 P.3d 1257 (2004); *State v. Van Cleave*, 239 Kan. 117, 122, 716 P.2d 580 (1986). Indeed, a statute generally only operates prospectively unless: (1) the language of the statute demonstrates the Legislature's clear intent that it operate retrospectively or (2) the statutory change is procedural and does not prejudice the substantive rights of the parties. *State v. Bernhardt*, 304 Kan. 460, 479, 372 P.3d 1161 (2016). The penalty provisions of a criminal offense are substantive and therefore K.S.A. 2018 Supp. 21-6810(d) will only operate retrospectively if the statute's language expresses a clear legislative intent to do so. See *State v. Martin*, 270 Kan. 603, 608, 17 P.3d 344 (2001).

Here, Sheppard argues that the plain language of K.S.A. 2018 Supp. 21-6810 requires its provisions to be applied retroactively. This includes the provisions added by the 2016 amendment, under which Sheppard's 1994 juvenile adjudication for burglary of a dwelling (a severity level 7 person felony) would decay and would not factor into the calculation of his criminal history score. But unlike the 2015 amendment—which included subsection (e) and specifically applied retroactively—the 2016 amendment contained no language expressing a clear legislative intent that it should operate retrospectively. And while it is true that the 2016 amendment left in place the language of K.S.A. 2016 Supp. 21-6810(e)—which provided that "[t]he amendments made to this section by this act are procedural in nature and shall be construed and applied

13

retroactively"—panels of this court repeatedly have held that this language only applies to the 2015 amendment and that if the Legislature had intended for it to apply to future amendments, it would have included the language "and amendments thereto." See, e.g., *State v. Churchill*, No. 118,821, 2019 WL 1087352, at *3-4 (Kan. App. 2019) (unpublished opinion), *petition for rev. filed* April 8, 2019; *State v. Maples*, No. 116,366, 2018 WL 1127568, at *12 (Kan. App.) (unpublished opinion), *rev. denied* 308 Kan. 1599 (2018); *State v. Landers*, No. 116,652, 2018 WL 385697, at *9-10 (Kan. App.) (unpublished opinion), *rev. denied* 308 Kan. 1598 (2018); *State v. Martinez*, No. 116,175, 2017 WL 3947378, at *12 (Kan. App. 2017) (unpublished opinion); *State v. Villa*, No. 115,595, 2017 WL 3207087, at *4-5 (Kan. App. 2017) (unpublished opinion); *Parker v. State*, No. 115,267, 2017 WL 947821, at *3-4 (Kan. App. 2017) (unpublished opinion), *rev. denied* 308 Kan. 1595 (2018).

These are all unpublished decisions, but their conclusions are buttressed by the 2017 amendment to K.S.A. 21-6810, which changed subsection (e) so that its retroactive provisions applied only to statutory changes made by the 2015 amendment. See K.S.A. 2018 Supp. 21-6810(e) ("The amendments made to this section by section 1 of chapter 5 of the 2015 Session Laws of Kansas are procedural in nature and shall be construed and applied retroactively."). The Kansas Legislature has clearly expressed its intent that only the 2015 amendments to K.S.A. 21-6810 shall be applied retroactively.

In sum, and as our court consistently has held, the 2016 statutory amendments to the juvenile decay rules are substantive in nature, and the Legislature has included no clear language that it intended the 2016 amendments to the statute to operate retroactively. As such, the amendments do not apply to Sheppard's case and the district court correctly included Sheppard's 1994 juvenile residential burglary adjudication in his criminal history score.

Affirmed.