NOT DESIGNATED FOR PUBLICATION

No. 124,568

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHAD M. STINE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed August 5, 2022. Affirmed and remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., SCHROEDER and CLINE, JJ.


PER CURIAM: Chad M. Stine appeals the trial court's revocation of his probation and imposition of his underlying 40-month prison sentence for his possession of methamphetamine convictions. He argues that the trial court committed reversible error by not making particularized findings to bypass K.S.A. 2017 Supp. 22-3716(c)(1)'s graduated intermediate sanction scheme when it imposed his underlying prison sentence. He further argues that we should reverse the trial court's revocation of his probation because the trial court abused its discretion in several ways. Additionally, Stine contends that we should remand to the trial court to correct the journal entry of his probation

1

violation order. He contends that the trial court made two findings in his journal entry revoking his probation that were not made at his probation violation hearing.

As we consider below, Stine's argument about the trial court violating K.S.A. 2017 Supp. 22-3716(c)(1)'s graduated intermediate sanction scheme is unpersuasive because our Supreme Court recently rejected this exact argument in *State v. Tafolla*, 315 Kan. 324, 331, 508 P.3d 351 (2022). Simply put, the trial court did not have to make particularized findings since Stine received probation under a dispositional departure. Next, although Stine points out that the trial court abused its discretion in two ways when it revoked his probation, we conclude that no reversible error occurred. Thus, we remand Stine's case to the trial court to correct the two errors contained within Stine's probation violation journal entry by issuing a nunc pro tunc order of correction.

FACTS

As part of a plea agreement with the State, on December 16, 2020, Stine pleaded guilty as charged to possessing methamphetamine, a severity level 5 drug felony in violation of K.S.A. 2017 Supp. 21-5706(a). Stine had a criminal history score of A, which meant that his presumed sentence under the revised Kansas Sentencing Guidelines Act was imprisonment. But in exchange for his guilty plea, as well as completing substance abuse treatment while on probation, the State agreed to support Stine's request for a dispositional departure to probation. Specifically, it would support Stine's motion to be sentenced to 12 months' probation with an underlying sentence of 40 months' imprisonment. Of note, although Stine pleaded guilty on December 16, 2020, he committed his crime on May 19, 2018. Thus, Kansas' 2017 sentencing laws controlled Stine's punishment. See *State v. Wilson*, 314 Kan. 517, 520, 501 P.3d 885 (2022) (explaining that the date of offense controls sentencing); *State v. Coleman*, 311 Kan. 332, 337, 460 P.3d 828 (2020) (same).

2

At his sentence hearing on January 22, 2021, the State supported Stine's dispositional departure motion as required under the plea agreement. Stine argued that the trial court should grant his motion because although he had a criminal history score of A, he had not committed a violent felony since 2008. He pointed out that he was already in substance abuse treatment at New Dimensions. He also explained that he intended to find a job as soon as he was physically able. Stine told the trial court that because he had a fractured back that may require surgery, he was currently unable to work.

The trial court responded directly to Stine. It told Stine that he should consider requesting a durational departure. It told Stine that he should consider requesting a shorter prison sentence rather than a dispositional departure to probation. It explained to Stine that given his lengthy criminal history, it doubted that he could successfully complete probation. But Stine ensured the trial court that he wanted a dispositional departure to probation. He explained that he "completely underst[ood] that with a violation [it would be] sending [him] to prison for 40 months."

As a result, the trial court granted Stine's dispositional departure, sentencing him to 12 months' probation with an underlying sentence of 40 months' imprisonment followed by 12 months' postrelease supervision. The trial court warned Stine that he must follow all his probation conditions. It explained that it wanted no excuses, like not giving his probation officer proof of completing a probation condition. It told him that if it "[got] violations that show[ed] that [he was] not with the program," the court would revoke his probation and impose his underlying prison sentence. Then, it ordered Stine to comply with the following probation conditions: (1) to report to the probation office as directed; (2) to report to his probation officer within 24 hours of any change in residence, employment, telephone number, or contact with law enforcement; (3) to take and then follow the recommendations of an alcohol and drug evaluation within 30 days of sentencing; (4) to take and then follow the recommendations of a mental health evaluation within 30 days of sentencing; (5) to attend and provide written proof of

attending substance abuse meetings at least three times a week for the first 90 days following sentencing; (6) to consume no alcohol or drugs unless prescribed; (7) to submit to drug testing at least once a month; (8) to gain full time employment or alternatively "spend at least 40 hours a week seeking employment, performing community work service, or pursuing education" "when not working full time"; (9) to "[a]void such persons or places of disreputable or harmful character"; (10) to follow a 9 p.m. to 6 a.m. curfew; (11) to pay his $848 in court costs; (12) to obey all laws; (13) to obey his probation officer's directions; and (14) to remain in Kansas unless granted permission to leave the state.

On April 1, 2021, the trial court issued a warrant for Stine's arrest after Stine's probation officer, Sheree Jones, alleged that Stine violated his probation by committing a domestic battery on March 24, 2021, and not providing written proof of his attendance at substance abuse meetings at least three times a week. At his probation violation hearing on June 3, 2021, the State withdrew its domestic battery allegation against Stine. All the same, Stine admitted that he had violated his probation by not providing Jones written proof of his substance abuse meetings attendance at least three times a week. Therefore, the trial court found Stine in violation of his probation.

Once the trial court accepted Stine's admission to violating his probation, the State and Stine jointly asked the trial court to extend his probation 12 months. In asking the trial court to extend his probation, Stine also admitted that his recent uranalysis test was positive for methamphetamine. Ultimately, the trial court sanctioned Stine by ordering him to serve 48 hours in jail, extending his probation by 12 months, and requiring him to obtain new drug and alcohol and mental health evaluations. It ordered Stine to take the new drug and alcohol evaluation within 14 days of the violation hearing, which was June 17, 2021. On the other hand, it ordered Stine to take the new mental health evaluation within 30 days of the violation hearing, which was July 6, 2021. Also, although not noted on the probation violation hearing journal entry, at the probation

4

violation hearing, the trial court told Stine that whatever facility completed his new evaluations must forward his evaluation results to Jones:

> "[T]he new evaluation has to indicate that they're aware of the drug use. It sounds like they are, but just make sure they write a letter, probation needs something that says we've reevaluated him, we're aware of his drug use on X date and as a result, we're making this recommendation."

Shortly after this hearing, however, the trial court issued a warrant for Stine's arrest based on Jones' contention that Stine had violated his probation again. According to Jones, Stine had violated his probation in the following ways: (1) by not timely documenting his completion of a new drug and alcohol evaluation; (2) by not documenting his attendance of substance abuse meetings at least three times a week; (3) by not obtaining employment or providing proof of his job search; (4) by not making any payments towards his court costs; and (5) by not making any payments towards his supervision fees. As to this last alleged violation, Jones asserted that Stine agreed to pay the supervision fees as part of his probation supervision agreement.

At this point, it is worth noting that although Stine does not argue error, there is some confusion as to when the trial court filed the warrant for Stine's arrest. The warrant states that the trial court signed it on June 19, 2021. Also, Stine's and Jones' testimony support that he was arrested on July 13, 2021. But oddly, the warrant was file stamped on July 19, 2021.

In any case, on October 14, 2021, the trial court held an evidentiary hearing on Stine's alleged probation violations. At this hearing, the State relied entirely on Jones' testimony to prove the alleged probation violations. Meanwhile, Stine relied on his testimony and the testimony of his mother to contest the alleged probation violations.

During direct examination, Jones testified that Stine violated the conditions of his probation as she had alleged in the trial court's warrant for his arrest on the probation violations. During cross-examination, Jones agreed that Stine had not missed any appointments with her following his initial probation violation. She agreed that Stine had told her that he was trying to find a job. And she agreed that Stine had told her about attending some substance abuse meetings, even providing proof of his attendance at some of those meetings. But in answering Stine's questions, Jones stressed that Stine never provided her proof of his job search and never provided her proof of attending substance abuse meetings.

During redirect examination, when asked about whether Stine brought her proof of his new drug and alcohol evaluation, Jones responded that she had "not receive[d] proof from Mr. Stine, himself." Jones' response prompted Stine to question Jones about whether she had received proof that he completed another drug and alcohol evaluation from "anyone else" on re-cross examination. At this point, Jones admitted that on August 19, 2021, she received proof from Encounter Behavior that Stine had completed a new drug and alcohol evaluation on July 1, 2021. She explained that normally the facilities who complete such evaluations send them to her quickly. And she agreed that when Encounter Behavior forwarded Stine's new evaluation results to her, it "acknowledged" that the delay in forwarding Stine's results was its "error."

During direct examination, Stine explained that between his initial probation violation hearing on June 3, 2021, and his arrest for the current alleged probation violations on July 13, 2021, he had not tested positive for any illegal substances. He explained that during that time, he attended 12 substance abuse meetings in June and 4 meetings in July. He alleged that the only reason that he had not started paying his court costs was because he had not gotten a job until July 11, 2021. He explained that on July 11, 2021, he got a full-time job at Bite Me BBQ. He also testified that when he reported to Jones on July 13, 2021, he had documentation of his employment with Bite

6

Me BBQ. But he testified that when he gave Jones this documentation, Jones told him that "it was too late" before having him arrested.

During cross-examination, Stine alleged that when he told Jones that he had accidently left his documentation of his substance abuse meeting attendance at home the week before his arrest, Jones told him that "she should send [him] home to go get it but she didn't have that kind of time so just bring it back next week." He repeated that when he attempted to provide Jones this documentation the next week on July 13, 2021, Jones had him arrested. Additionally, when the State asked Stine about whether he had successfully completed drug and alcohol treatment, Stine testified that shortly before being arrested for the current alleged probation violations, he went "to a different facility to get [a new drug and alcohol evaluation] and complete treatment."

After his cross-examination by the State, the trial court directly questioned Stine. In doing so, the trial court asked Stine if he had proof of his substance abuse meeting attendance with him. Stine repeated that he was attending meetings immediately before his arrest on the current alleged probation violations. But he explained that he had not brought documentation of his attendance with him to court. At this point, the trial court and Stine had the following exchange:

> "THE COURT:  . . . I'm just dumbfounded. You claim you're doing all of your
> probation conditions, and—except for providing some proof of employment the day that
> you're arrested, no—well, and some AA meetings I think before the last probation
> violation. I—I mean, if you're in treatment all it takes is, the session's over, hey, Joe
> Instructor, can you—can you just write a little statement on a letterhead I'm here? Can
> you print out my treatment update? I mean, why would you not bring in—if you're really
> telling me the truth, why would you not just simply say, hey, give me a letter, I'll wait
> here, just hand-write it out, for that matter. Why would you not do that?
> "[STINE]:  I know that my probation officer has talked to my counselor at my
> treatment."

Following this exchange, Stine's mother simply testified that Stine had attended his substance abuse meetings before his most recent arrest. She also asserted that Stine had told her that he wanted to resume treatment should he be allowed to continue probation.

At the close of evidence, the State argued that the trial court should find Stine in violation of his probation because he had not timely brought proof of his employment, his attendance of substance abuse meetings, or completion of his drug and alcohol evaluation. It further stressed that Stine failed to provide evidence that he was looking for a job before getting his job at Bite Me BBQ. It asserted that Stine was in violation of his probation because although he had no job to pay his court costs, his failure to pay his court costs was "nonetheless . . . a violation." And the State argued the following:

> "The drug and alcohol eval was supposed to be done 24 days after June 23rd. The one that [Jones]—State's Exhibit 1 states that he did that January 1st [*sic*] missing that deadline of July—June 27th. Just to be sure I said it right, it was done July 1st and not on June 27th."

In response, Stine argued that he tried to comply with his probation conditions but was not a "super human." He argued that he had attempted "to bring proof of all of his requirements to the probation" and "attempted to thoroughly and truthful[ly] complete this Court's requirements of probation." He argued that despite not providing documentation, he had attended substance abuse meetings and gained employment. And he argued that the reason he had not paid his court costs was because he lacked the money to do so until he got his job. Citing all of this, Stine asked the trial court to "put [him] back on probation" given his cited efforts to comply with the conditions of his probation. He also asked that the trial court "give him credit for his time [he had served]" since his arrest on the current alleged probation violations.

Yet, in the end, after finding Stine in violation of his probation, the trial court revoked Stine's probation, imposing his underlying sentence of 40 months' imprisonment followed by 12 months' postrelease supervision. To support its decision, the trial court made the following explanation:

"Well, the—the most difficult situation about this case is your criminal history. You're a criminal history A which is the highest criminal history. We had to grant a departure and I made findings, reluctantly, of substantial and compelling reasons.

"But, I mean, this starts back with your first theft conviction in Butler County back in the year 2000, and we now have 27 different entries of criminal violations. I mean, some of this is traffic, but the bulk of it is just different criminal convictions, different attempts at probations in the past, and so this has been tried over and over again and yet we're back here again.

"And, you know, it's what they say in Alcoholics Anonymous, if you've been embracing that, Narcotics Anonymous, a person has to hit bottom before they can change. They have to suffer enough consequences, and that's what appears to be going on in this case. This isn't your first rodeo. You know what you need to do; I mean, you should. I mean, you've been put on probation so many times, been ordered evaluated so many times.

"I am going to find, in looking at the violations, a violation of No. 1, defendant failing to provide proof of completing a new drug and alcohol evaluation in 24 days, following the recommendations. And the thing on this is an evaluation wasn't done in the period of time and then the defendant self-discharges from the treatment.

"And, Mr. Stine, if there's one thing you should know by now, you should not listen to yourself anymore from here on out. I mean, look at where you're at. Look at the state of your life. I mean, not only from a criminal point of view but just employment, relationships—relationships with significant others, family members. I mean, it's just a mess. Your best thinking has gotten you into a royal mess, one after another. It's just been one train wreck after another for decades.

"Your best thinking is defective. So the first time you start thinking I need to do A, B, C, or D, your second thought ought to be that's probably wrong; I'm going to talk to my sponsor. You need to talk then to responsible people that know. Your sponsor in Narcotics Anonymous who should be somebody with at least ten years of sobriety and

9

working the 12 Steps, talking with your treatment provider, talking with people at your treatment provider that are on staff. Let them make the decisions and follow their advice. But discharging yourself from your treatment program, I mean, it's a no-go. I just—we just can't get beyond that, and it's a sign that you continue to think you know better.

"The NA meetings—we do have some partial sheets on this, but you should have—by this point have attended 36 meetings I ordered, at least. I ordered you to do three meetings a week for the first 90 days so that would be, according to my calculations, about 36 meetings. And here we are months and months and months and months into your probation and we've got a few, but that should have been knocked out. So I'm going to find you in violation of that for not providing the proof.

"And, again, it's your probation. I—you're telling your mom all this stuff, very communicative with her. And I understand she's mom, probably easy to talk to, but I—there's just a disconnect. Why is there this just open, complete communication with mom and then nothing with your probation officer? Or it's just, well, I just assumed that they knew because I thought they talked with somebody.

"Three and four I'll find violations to for not providing proof of employment and job searches. For the record, I have taken judicial notice of the court file.

"I would also take judicial notice of just the state of the economy for the past year. We're just coming out of a pandemic. And for the past year we have had underemployment in Sedgwick County. I mean, you just drive down the street it's just sign after sign outside of businesses 'Need help.' I mean, I had lunch today and the place of business had a little kiosk set up in their facility wanting jobs. It's just—there's no excuse.

"And they—they don't care about felonies. I know people will say that all day long, but they don't ask. They don't care. If they don't, there's ten other places down the road that don't give a flip. All they care about is are you going to show up for work and are you going to do a half-baked job. You don't have to even be stellar, just half-baked, and they'll eat you up and you'll climb up the ladder of employment.

"But this is the problem. When I step back—probation is about changing lives. Your life is in a horrible state as your criminal history shows, and so that's the way I look at—look at this. It's about changing lives. It's not hooping—jumping through hoops, checking boxes; and that's all you've been doing. You just been doing just—well, I'm checking this box off. I'm not interested in changing my life. I'm not interested in not committing crimes anymore. I'm not interested in really staying long-term sober. I'm

going to play with this probation. I'm going to try to do the bare minimum. I'm just going to kind of shuffle in and shuffle out and have my probation officer do my probation for me. She's the one that's going to provide proof that I'm employed. She's the one that's going to provide proof of . . . [*sic*]

"I mean, first of all, Probation doesn't have time for that. But before we even get to that, your life's never going to be success if that's your idea. Mom's going to bail me out. Probation's going to do it for me. By golly, grab life by the horns. Take charge here and—and stop just relying on other people to—to do things for you and just shuffling through life half—doing things half-baked.

"So when I step back and look at this, I—I don't see that you're really interested in staying sober and changing your life. I see you just trying to be—check boxes. And, I mean, if you were wanting to be sober, you would have been in treatment within a week. There are places in town you can be in treatment within a week. And here we are. You know, July I ordered you to get into treatment within 30 days—be evaluated within 30 days and immediately follow the recommendations. And that was in January and then here we are and still nothing.

"So I just urge you to immerse yourself in the 12 Steps of Narcotics Anonymous. Go to meetings, meetings, meetings. I'd go to meetings every day, multiple times a day, when you get out. Look for a sober treatment facility or a sober living facility. I mean, a group home—that would be excellent for you. But you got to make this number one. So I'll go ahead and revoke and impose the 40 months."

Although the trial court never mentioned Stine's failure to make payments when revoking his probation at the violation hearing, in its journal entry of the hearing, it stated that it revoked Stine's probation partly because of his failure to pay court costs and supervision fees. Stine now timely appeals the trial court's revocation of his probation to this court.

ANALYSIS

*Did the trial court err by revoking Stine's probation?*

On appeal, Stine argues that the trial court made three reversible errors when revoking his probation. First, although Stine recognizes that he never asked the trial court to impose a graduated intermediate sanction on him below, he argues that the trial court had to impose a graduated intermediate sanction upon him under K.S.A. 2017 Supp. 22-3716(c)(1) or otherwise make particularized findings to bypass those sanctions. Because the trial court did neither, Stine argues that it committed reversible error. Second, Stine argues that the trial court abused its discretion in multiple ways by revoking his probation. He argues that under the facts of his case, which showed that he "'ha[d] taken almost every requirement he [could] humanly do seriously,'" the trial court acted unreasonably by revoking his probation and imposing his underlying prison sentence. Third, Stine takes issue with the trial court's findings in his probation violation journal entry. He points out that although the trial court never mentioned his alleged failure to pay court costs or supervision fees at his probation violation hearing, in his journal entry, the trial court found that he had violated his probation for these reasons. As a result, notwithstanding his request to reverse the revocation of his probation, Stine asks us to remand to the trial court to issue a nunc pro tunc order correcting this oversight.

The State counters that Stine's complaint about the trial court violating K.S.A. 2017 Supp. 22-3716(c)(1)'s graduated intermediate sanction scheme ignores that he was on probation because of a dispositional departure. Citing our Supreme Court's recent decision in *Tafolla*, 315 Kan. 328, it argues that once Stine's probation violations were established, the trial court did not need to make particularized findings to revoke Stine's probation since he was on probation because of a dispositional departure. As for Stine's abuse of discretion arguments, the State contends that each of Stine's complaints are baseless. In essence, the State argues that the evidence proved that Stine violated his

probation by failing to timely give Jones proof related to his employment, proof of his substance abuse meeting attendance, and proof of his new drug and alcohol evaluation. It contends that because the evidence vividly illustrated these violations, the trial court's decision to revoke Stine's probation was reasonable. Regarding Stine's request to remand to the trial court with directions to correct Stine's probation violation journal entry by entering a nunc pro tunc order, the State agrees that this remand is necessary because the trial court never made findings about Stine violating his probation by not paying court costs and supervision fees at the probation violation hearing.

a. *Standard of Review*

When an offender contests a probation violation, the State must prove that the offender violated his or her probation by a preponderance of the evidence. That is, the State must prove that the violation is more probably true than not true. *State v. Lloyd*, 52 Kan. App. 2d 780, 782, 375 P.3d 1013 (2016). Once the State proves an offender's violation by a preponderance of the evidence, the trial court has the discretion to revoke an offender's probation in accordance with K.S.A. 2021 Supp. 22-3716—the statute governing arrest and punishment for probation violations. *Tafolla*, 315 Kan. at 328; *State v. Lyon*, 58 Kan. App. 2d 474, 478, 471 P.3d 716 (2020).

As previously noted, Stine committed his underlying crime on May 19, 2018. Thus, Kansas' 2017 sentencing laws controlled Stine's punishment. See *Wilson*, 314 Kan. at 520; *Coleman*, 311 Kan. at 337. For certain exceptions, K.S.A. 2017 Supp. 22-3716(c)(1) lists graduated sanctions that the trial court must impose upon felony offenders when they violate their probation. K.S.A. 2017 Supp. 22-3716(c)(9)(B)—a rule allowing the trial court to immediately revoke an offender's probation upon proof of a violation if the offender was on probation because of a dispositional departure—is one such exception. It comes down to this:

"(9) The court may revoke the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction of an offender pursuant to subsection (c)(1)(E) without having previously imposed a sanction pursuant to subsection (c)(1)(B), (c)(1)(C) or (c)(1)(D) if:

. . . .

(B) the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction was originally granted as the result of a dispositional departure granted by the sentencing court pursuant to K.S.A. 21-6815, and amendments thereto." K.S.A. 2017 Supp. 22-3716(c)(9)(B).

So, K.S.A. 2017 Supp. 22-3716(c)(9)(B) says that the trial court has the discretion to revoke an offender's probation on his or her first probation violation without first sanctioning the offender under K.S.A. 2017 Supp. 22-3716(c)(1)'s graduated intermediate sanction scheme if that offender was on probation because of a dispositional departure.

As a result, when an offender challenges the trial court's decision to revoke his or her probation under K.S.A. 2017 Supp. 22-3716(c), we review the trial court's decision for an abuse of discretion. *Tafolla*, 315 Kan. at 328; *Coleman*, 311 Kan. at 334. A trial court abuses its discretion when its decision is based on an error of law, an error of fact, or an otherwise unreasonable basis. *Tafolla*, 315 Kan. at 328. To the extent that Stine argues the trial court violated K.S.A. 2017 Supp. 22-3716(c)'s plain language by failing to impose a graduated intermediate sanction upon him, though, interpretation of a statute is a question of law over which we have unlimited review. *Coleman*, 311 Kan. at 334-35.

b. *No Violation of K.S.A. 2017 Supp. 22-3716(c)(1)'s Graduated Intermediate Sanction Scheme*

Stine argues that the trial court erred by "not exhausting the intermediate sanctions in K.S.A. 2017 Supp. 22-3716 before ordering [him] to serve his underlying prison sentence." Although he acknowledges that he never asked the trial court to impose a graduated intermediate sanction upon him, he complains that the trial court never

14

discussed applying graduated intermediate sanctions upon him, "let alone make any findings necessary to bypass [the graduated intermediate sanctions]." As evidence that the trial court failed to make the necessary findings to bypass the graduated intermediate sanctions, he complains that his probation violation journal entry "does not document a statutorily recognized reason" why the trial court revoked his probation rather than impose a graduated intermediate sanction. Also, he argues that our Supreme Court's *Wilson* decision supports his argument. He stresses that there, our Supreme Court did not affirm the trial court's revocation of Wilson's probation under K.S.A. 2016 Supp. 22-3716(c)(9)(B)'s dispositional departure exception because the trial court never made findings under that exception. *Wilson*, 314 Kan. at 524.

In short, Stine's argument is unpersuasive because it obscures the fact that he received a dispositional departure to probation. To begin, although Stine's probation violation journal entry does not state that the trial court revoked Stine's probation under K.S.A. 2017 Supp. 22-3716(c)(9)(B), at his probation violation hearing, the trial court started its revocation ruling by pointing out that Stine was on probation because of a dispositional departure: "Well, the—the most difficult situation about this case is your criminal history. You're a criminal history A which is the highest criminal history. We had to grant a departure and I made findings, reluctantly, of substantial and compelling reasons." Therefore, contrary to Stine's argument that it is unclear why the trial court revoked his probation, the trial court relied on Stine's dispositional departure probation status to revoke his probation.

Next, Stine's case is clearly distinguishable from the *Wilson* decision. Wilson argued that the trial court abused its discretion by imposing K.S.A. 2016 Supp. 22-3716(c)(1)'s graduated intermediate sanctions upon him out of order. In the end, our Supreme Court agreed with Wilson's argument. It held that K.S.A. 2016 Supp. 22-3716(c)(1)'s plain language required the trial court to impose intermediate sanctions upon an offender in a graduated order. 314 Kan. at 522-23. Because of this error, the trial court

reversed Wilson's probation. 314 Kan. at 524-25. In doing so, it noted that although the trial court could have bypassed applying K.S.A. 2016 Supp. 22-3716(c)(1)'s graduated intermediate sanctions by invoking K.S.A. 2016 Supp. 22-3716(c)(9)(B)'s dispositional departure exception, it would not hold the trial court's error harmless for this reason since (1) the trial court never referred to the exception and (2) the State did not rely on this exception to argue harmless error on appeal. 314 Kan. at 524.

Here, Stine's challenge does not involve whether the trial court applied K.S.A. 2017 Supp. 22-3716(c)(1)'s graduated intermediate sanctions in the wrong order. Rather, he argues that the trial court violated K.S.A. 2017 Supp. 22-3716(c)(1) by not applying subsection (c)(1)'s graduated intermediate sanctions or otherwise making a finding allowing it to bypass applying those sections. Also, as just explained, the trial court relied on Stine's dispositional departure to probation as a reason to revoke his probation. Additionally, the State's response to Stine's argument about the trial court violating K.S.A. 2017 Supp. 22-3716(c)(1) hinges on Stine receiving probation because of a dispositional departure. Given all of this, it is readily apparent that Stine's reliance on *Wilson* falls short of the mark.

Most importantly, our Supreme Court's recent *Tafolla* decision rejects Stine's argument. There, Tafolla argued that the trial court erred when it "did not identify the statutory exception on which it relied on to bypass [the graduated] intermediate sanctions." *Tafolla*, 315 Kan. at 329. Our court had rejected Tafolla's argument, holding that a trial court need not expressly invoke K.S.A. 2018 Supp. 22-3716(c)(9)(B)'s dispositional departure exception to revoke an offender's probation under that exception. 315 Kan. at 329. Our Supreme Court agreed with our interpretation of K.S.A. 2018 Supp. 22-3716(c)(9)(B). It held that the plain language of K.S.A. 2018 Supp. 22-3716(c)(9)(B) authorized the trial court to revoke an offender's probation granted because of a dispositional departure without making particularized findings. 315 Kan. 324, Syl. ¶ 2. This meant that the trial court's reference to its decision to grant Tafolla's dispositional

16

departure motion while revoking Tafolla's probation adequately invoked K.S.A. 2018 Supp. 22-3716(c)(9)(B)'s dispositional departure exception. In turn, our Supreme Court held that the trial court made no error of law when revoking Tafolla's probation. 315 Kan. at 330-31. Additionally, it warned:

"A defendant who fails to request a graduated intermediate sanction and makes no request for more definite findings faces an uphill battle when trying to show that a district court abused its discretion. If there is no objection, we presume the district court 'found all facts necessary to support its judgment.' [Citation omitted.]" 315 Kan. at 332.

Thus, the *Tafolla* court made two important holdings: (1) that the trial court may revoke an offender's probation under K.S.A. 2017 Supp. 22-3716(c)(9)(B)'s dispositional departure exception without making particularized findings and (2) that absent a specific request to apply subsection (c)(1)'s graduated intermediate sanction scheme, an offender carries a heavy burden in proving that the trial court wrongly relied on K.S.A. 2017 Supp. 22-3716(c)(9)(B)'s dispositional departure exception. Yet, this means that our Supreme Court has already rejected Stine's argument that the trial court must make particularized findings to invoke K.S.A. 2017 Supp. 22-3716(c)(9)(B)'s dispositional departure exception. It also means that Stine's argument is particularly unpersuasive since he is raising it for the first time on appeal. In short, because we are duty-bound to follow our Supreme Court's precedent in *Tafolla*, Stine's argument about the trial court violating K.S.A. 2017 Supp. 22-3716(c)(1)'s graduated intermediate sanction scheme necessarily fails. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017) (holding that this court is duty-bound to follow our Supreme Court's precedent absent some indication that our Supreme Court is moving away from that precedent).

c. *No Reversible Abuse of Discretion When Revoking Stine's Probation*

Stine's remaining argument is that the trial court abused its discretion by making errors of law, making errors of fact, and acting unreasonably when revoking his

probation. Specifically, he makes four broad arguments why the trial court erred when revoking his probation: (1) because the trial court violated K.S.A. 60-409—the rule on judicial notice; (2) because the trial court relied on an alleged probation violation not alleged in his probation violation warrant; (3) because contrary to the trial court's finding otherwise, he provided adequate proof of his substance abuse meeting attendance; and (4) because he complied with most of his probation conditions, rendering the trial court's decision unreasonable. Although some of Stine's complaints have merit, he fails to establish that the trial court wrongly revoked his probation and imposed his underlying 40-month prison sentence.

K.S.A. 60-409(b)(3) states that "without request by a party," courts may take judicial notice of "such facts as are so generally known or of such common notoriety within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute." Similarly, K.S.A. 60-409(b)(4) states that "without request by a party," courts may take judicial notice of "specific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy." As a result, if a fact is so well known that it is indisputable, then a trial court may take judicial notice of that fact. If the fact does not fall into this category, however, then K.S.A. 60-409(c) controls. It provides as follows:

> "Judicial notice shall be taken of each matter specified in subsection (b) of this section if a party requests it and (1) furnishes the judge sufficient information to enable him or her properly to comply with the request and (2) has given each adverse party such notice as the judge may require to enable the adverse party to prepare to meet the request." K.S.A. 60-409(c).

Significantly, our Supreme Court has held that trial courts may take judicial notice of their own records under K.S.A. 60-409(c). *State v. Lowe*, 238 Kan. 755, Syl. ¶ 4, 715 P.2d 404 (1986), *overruled on other grounds by Lowe v. State*, 242 Kan. 64, 744 P.2d 856 (1987).

Here, in making his judicial notice argument, Stine briefly complains that it is unclear what the trial court meant when it stated that it took "judicial notice of the court file" when revoking his probation. But this statement is not ambiguous. It is readily apparent that the trial court was taking judicial notice of its record of Stine's court case by saying this. Because the trial court could take judicial notice of its own record under K.S.A. 60-409(b)(4), it did not abuse its discretion by taking judicial notice of its court file.

Stine's main complaint is that the trial court wrongly took judicial notice of "the state of the economy" during the pandemic when discussing his failure to provide proof of his job searches and ultimate alleged employment at Bite Me BBQ. Again, in revoking Stine's probation, the trial judge implied that Stine should have found a job quicker because the trial judge had noticed many job openings. Stine argues that the state of the economy was not an area of generalized knowledge that the trial court could take judicial notice of under K.S.A. 60-409(b)(3)-(b)(4). He then argues that because it was not an area that the trial court could take judicial notice of, he should have been given the "opportunity to present information to counter" the trial court's opinions about the economy. He suggests that if given that opportunity, he would have discussed his difficulties getting a job because of his fractured back, criminal history, and strict probation conditions. The State responds that the trial court properly took judicial notice of the economy because "[o]ne of the most well-known effects of the pandemic has been the difficulty that many businesses have had in finding enough employees to stay open, let alone operate at a pre-pandemic level."

Although under very different factual circumstances, we have explained that complex calculations involving the "the weighing of many arcane economic factors . . . are the subjects of expert analysis." *Kansas City Power & Light v. Kansas Corporation Comm'n*, 52 Kan. App. 2d 514, 516, 371 P.3d 923 (2016). Likewise, we have affirmed the trial court's denial of a pro se defendant's motion to testify as an expert on risk

19

compensation based on his master's degree in economy because his "master's degree in economics does not qualify him as an expert witness." *City of Mission v. Furnish*, No. 119,597, 2018 WL 6425151, at *2 (Kan. App. 2018) (unpublished opinion).

As a result, we conclude that the trial court's statement that Stine should have found a job quicker given "the state of the economy" is not a statement of fact. Only a statement which is based on observable, corroborating objective evidence can be considered a statement of fact.

As for Stine's argument that the trial court relied on a reason not listed in his probation violation warrant to revoke his probation, this argument is also persuasive. Stine argues that the trial court wrongly revoked his probation because he "self-discharged" from treatment. He points out that under K.S.A. 2017 Supp. 22-3716(b)(1), his probation officer had to provide the trial court with written notice of his specific probation violations. He also points to our Supreme Court's precedent in *State v. Hurley*, 303 Kan. 575, 582, 363 P.3d 1095 (2016), explaining that an offender is entitled to written notice of his or her alleged probation violations under the Fourteenth Amendment to the United States Constitution. The State responds that it is irrelevant that Stine's arrest warrant did not list his decision to self-discharge from treatment as a probation violation because the trial court did not revoke Stine's probation based on his decision to self-discharge. Instead, according to the State, the trial court "simply noted this factor in determining the appropriate disposition."

Although there were multiple reasons why the trial court revoked Stine's probation, the State's characterization of Stine's decision to self-discharge as just being a factor the trial court considered in determining the appropriate disposition is incorrect. A review of the trial court's ruling establishes that it was bothered by Stine's decision to self-discharge from treatment. It explicitly referred to this decision as a "no-go" that it could not "get beyond." So, contrary to the State's argument, the trial court determined

that Stine violated his probation conditions by self-discharging from treatment. Because this allegation was not contained in Stine's probation violation warrant, the trial court abused its discretion by finding him in violation of his probation for this reason. In turn, to the extent that the trial court's revocation ruling relied on this finding, the trial court erred.

Next, Stine's argument about the trial court revoking his probation for not providing proof of his substance abuse meeting attendance hinges on ignoring certain evidence. To review, on June 3, 2021, the trial court imposed a 48-hour jail sanction on Stine and extended Stine's probation for failing to provide written evidence of his substance abuse meeting attendance to Jones. This was Stine's initial probation violation. After serving this sanction, Stine remained on probation for around a month until his arrest for the current probation violations, which included failing to provide proof of his substance abuse meeting attendance to Jones three times per week as ordered by the trial court. At his probation violation hearing, Stine's testimony indicated that the first time he attempted to give Jones proof of his substance abuse meeting attendance after his initial probation violation was when he was arrested on July 13, 2021. Jones also testified that Stine only gave her documentation of his substance abuse meeting attendance once, on April 5, 2021. Then, in finding Stine in violation of his probation, the trial court discussed how Stine had failed to give Jones written proof of his substance abuse meeting attendance throughout the duration of his probation, not just since serving his 48-hour jail sanction for his initial probation violation.

Stine points to the trial court's discussion about there not being enough written documentation of his substance abuse meeting attendance throughout his probation. He contends that because the trial court referred to his failure to provide written documentation of his substance abuse meeting attendance throughout his probation, the trial court punished him for violative conduct that it had already punished him for. To support his argument, Stine cites our decision in *State v. Henson*, No. 119,257, 2019 WL

21

2398042, at *3 (Kan. App. 2019) (unpublished opinion). There, we reversed the trial court for sanctioning Henson for the same violative conduct twice. 2019 WL 2398042, at *3.

Yet, as just noted, Stine's testimony indicates that the first time he attempted to give Jones proof of his substance abuse meeting attendance after his initial probation violation was when he was arrested on July 13, 2021. Also, in making his appellate argument, Stine never contests that he continued to violate his probation condition to give Jones written proof of his substance abuse meeting attendance after his initial punishment for violating it on June 3, 2021. Thus, Stine's argument ignores that by referring to his general failure to give Jones written documentation of his substance abuse meeting attendance throughout his probation, the trial court was necessarily discussing his continued failure to give Jones the required documentation. So, the trial court was not punishing Stine for the same violative conduct. Rather, it was punishing Stine for his continued failure to provide Jones with this written documentation of his substance abuse meeting attendance after being punished for the same violative conduct on June 3, 2021.

In challenging the trial court's finding that he violated his probation by failing to give Jones written documentation of his substance abuse meeting attendance, Stine also complains that the trial court abused its discretion because he had no deadline for turning in his written documentation of his substance abuse meeting attendance. So, he contends that he complied with this condition by attempting to give Jones written proof of his attendance on July 13, 2021, when he was arrested. But this argument is patently flawed because Stine's probation condition required him to provide "proof of attendance in writing" of his substance abuse meeting three times per week. Stine's argument ignores the timing requirement that he attend substance abuse meetings three times per week. The only reasonable interpretation of this condition is that Stine had to regularly provide Jones written proof of his substance abuse meeting attendance three times a week. The condition did not allow Stine to provide proof of his substance abuse meeting attendance

22

at his discretion. Thus, the trial court did not abuse its discretion by finding that Stine failed to timely give Jones written proof of his substance abuse meeting attendance.

In his final argument, Stine asserts that "[a]fter taking into account the errors the [trial] court made, and looking at the evidence that supported the permissible findings," no reasonable person would have agreed with the trial court's decision to revoke his probation. The State counters that because there was proof that Stine committed some probation violations, the trial court's ultimate decision to revoke Stine's probation was reasonable.

On Stine's probation violation journal entry, notwithstanding its errant findings already discussed, the trial court found that Stine violated his probation conditions by doing the following:  (1) failing to provide proof of his new drug and alcohol evaluation, (2) failing to provide proof of his substance abuse meeting attendance, and (3) failing to get employment or provide proof of his job searches. There is evidence to support each of the trial court's findings.

Although Stine's probation violation warrant stated that Stine had 24 days from June 3, 2021, to complete the new drug and alcohol evaluation, at Stine's initial probation violation hearing when the trial court ordered him to take a new drug and alcohol evaluation, it ordered him to complete it within 14 days of June 3, 2021. Stine's initial probation violation journal entry also states that he only had 14 days to complete the new drug and alcohol evaluation. It seems that the reference to 24 days on the warrant was a clerical error. In any case, 14 days following June 3, 2021, was June 17, 2021. At his probation violation hearing, Jones testified that Stine completed the new drug and alcohol evaluation on July 1, 2021. Thus, the trial court correctly found Stine in violation of his probation for failing to timely take his new drug and alcohol evaluation.

23

As for the trial court's finding that Stine failed to timely provide proof of his substance abuse meeting attendance, as discussed already, Stine conceded during his testimony that he first attempted to give Jones written proof of his substance abuse meeting attendance following his initial probation violation the day of his arrest. So, in his testimony, Stine implicitly conceded that he violated his probation condition to give Jones written documentation of his substance abuse meeting attendance three times per week from when the trial court initially found him in violation of his probation on June 3, 2021, to when he was arrested on the current probation violations on July 13, 2021.

As for the trial court's finding that Stine failed to get employment or provide proof of his job searches, Stine's testimony suggests that the first time he attempted to give Jones any documentation related to his employment was when he was arrested on July 13, 2021. He explained that at that time, he was going to give Jones his boss' phone number as proof that he started his job at Bite Me BBQ on July 11, 2021. Although Stine's probation conditions did not explicitly require him to give Jones written proof of his job searches, it did require him to maintain full-time employment or spend 40 hours per week looking for employment. Also, Stine's probation conditions explicitly required him to give Jones proof of employment within 24 hours of attaining employment. According to Stine's own testimony, he was going to give Jones proof of his employment with Bite Me BBQ—by way of his boss' phone number—more than 24 hours after attaining employment there.

In summary, the evidence before the trial court supported its findings that Stine violated his probation conditions by not timely completing a new drug and alcohol evaluation, by not timely giving Jones written documentation of his substance abuse meeting attendance three times a week, and by not timely giving Jones proof of his job with Bite Me BBQ. So, although the trial court erred by taking judicial notice of "the state of the economy" during the pandemic when considering Stine's employment efforts

24

and by considering Stine's decision to self-discharge from treatment, the preceding probation violations supported the trial court's revocation of Stine's probation.

K.S.A. 2021 Supp. 60-261 provides:

> "Unless justice requires otherwise, no error . . . by the court or a party, is ground for granting a new trial, for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

Previously, we have applied K.S.A. 2021 Supp. 60-261's harmless error rule to affirm the trial court's revocation of an offender's probation when the trial court made both proper and improper probation violation findings. See *State v. Mireles*, No. 102,997, 2011 WL 135027, at *3 (Kan. App. 2011) (unpublished opinion); *State v. Kennon*, No. 102,936, 2010 WL 3662890, at *2 (Kan. App. 2010) (unpublished opinion). Because valid reasons still supported the trial court's revocation of the offenders' probation in those cases, we ruled that the trial court's revocation of those offenders' probation was reasonable. *Mireles*, 2011 WL 135027, at *3; *Kennon*, 2010 WL 3662890, at *2.

Because the trial court made valid probation violation findings, we apply the harmless error rule to the trial court's errant decision to take judicial notice of the state of the economy during the pandemic in considering Stine's employment efforts. For this same reason, we also apply the harmless error rule to the trial court's finding that Stine violated his probation by self-discharging from treatment. Although Stine argues that he mostly complied with his probation conditions, in doing so, he also concedes that he did not entirely comply with his probation conditions. Also, Stine's underlying crime is methamphetamine possession. And two of the probation conditions that Stine violated involved treating his addiction.

For the trial court's decision to be so unreasonable as to constitute an abuse of discretion, no reasonable person could agree with the trial court's decision to revoke Stine's probation under the facts of his case. See *State v. Sheppard*, 56 Kan. App. 2d 1193, 1198, 444 P.3d 1006 (2019). Here, although Stine complains that he mostly complied with his probation conditions, he violated his conditions to get a new drug and alcohol evaluation, to provide Jones written proof of his substance abuse meeting attendance, and to provide Jones proof of getting a new job within 24 hours. At his sentencing, the trial court warned Stine that he must comply with all of his probation conditions. Indeed, it told Stine that it wanted no excuses, like not giving his probation officer proof of completing a probation condition. But this is exactly what happened, even after Stine's initial sanction for violating his probation by not giving Jones written proof of his substance abuse meeting attendance three times per week. Under these facts, the trial court's decision to revoke Stine's probation and impose his underlying sentence of 40 months' imprisonment was not an abuse of discretion.

Affirmed and remanded with directions.